UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DWAYNE ANTHONY JOHNSON

     Plaintiff,     Case No. 1:17-cv-570

v.     Honorable Janet T. Neff

UNKNOWN SIKON,

     Defendant.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court denied Plaintiff leave to proceed *in forma pauperis*, because he had three strikes within the meaning of 28 U.S.C. § 1915(g). Plaintiff thereafter paid the entire $400.00 civil action filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Dwayne Anthony Johnson presently is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF). He sues ECF Librarian (unknown) Sikon.

Plaintiff alleges that he was transferred to ECF on October 5, 2016. He was placed in administrative segregation on a misconduct conviction for "incit[ing] to riot or strike," based on his participation in a riot at Kinross Correctional Facility in September 2016. On February 21, 2017, Plaintiff sent two legal envelopes and a legal photocopy disbursement to the library. One envelope contained a 17-page complaint and 46 exhibits and a 6-page Motion for Injunction. Plaintiff asked for two copies of the contents of the first envelope. The second envelope contained an 8-page Petition for Judicial Review, together with a 34-page brief in support. He requested three copies of the contents of the second envelope.

On February 23, 2017, Defendant Sikon brought both envelopes back to Plaintiff in segregation. Sikon informed Plaintiff that his photocopy requests were being denied, because he had insufficient funds in his account to pay for the copies. Defendant Sikon advised Plaintiff that, because he was assigned a legal writer, he could have the legal writer prepare legal documents, and copies would be provided for any documents drafted by the legal writer. Plaintiff, however, was not entitled to free copies of his own handwritten legal documents. He instead was required to hand-copy his legal documents.

Plaintiff told Defendant Sikon that he did not need a legal writer, because he had a paralegal diploma and could prepare his own. Plaintiff then told Defendant Sikon that he believed Sikon had read his legal work, to which Sikon responded, "[S]o I guess you're gonna sue me too."

(Compl., ECF No. 1, PageID.5.) Defendant Sikon then slammed the door slot shut and walked away, purportedly with a smirk on his face.

Plaintiff filed a grievance, which was denied at Steps I and II, on March 4 and April 7, 2017, respectively. On April 8, Plaintiff learned that Defendant Sikon had provided a loan for photocopies to prisoner Braddox, even though Braddox did not have sufficient funds in his prisoner account. Prisoner Braddox was confined to segregation for the same reason as Plaintiff. Plaintiff thereafter filed a Step-III grievance, which was denied on May 26, 2017.

Plaintiff contends that Defendant Sikon violated his rights under the Equal Protection Clause, when Sikon denied him funds for copies of his documents, but granted a prison loan for photocopies to prisoner Braddox. Plaintiff seeks compensatory and punitive damages.

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. Equal Protection

Plaintiff claims that Defendant Sikon's denial of his request for copies violated the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a

suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to photocopies under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff alleges that he was treated differently than prisoner Braddox, for whom a loan for legal copies was granted. Plaintiff contends that Braddox, like Plaintiff, was in segregation for the misconduct of inciting to riot or strike. Plaintiff, however, does not allege facts suggesting that he was similarly situated with prisoner Braddox. He simply alleges that all prisoners in segregation are similarly situated.

First, Plaintiff has not alleged that he and Braddox were similarly situated as to being considered indigent under MICH. DEP'T OF CORR., Policy Directive (PD) 04.02.120, ¶¶ D-I (authorizing the extension of indigent loans to prisoners who have a spendable balance less than

$11.00 in the preceding month and have applied for and received indigent status under PD 04.02.120, ¶¶ B-C). Plaintiff's allegations suggest that he was not indigent under PD 04.02.120, ¶¶ B-C. He makes no such allegation about prisoner Braddox's indigent status.

Second, even if Plaintiff and prisoner Braddox were similarly situated with respect to indigent status under PD 04.02.120, ¶¶ B-C, Plaintiff does not allege that they were similarly situated with respect to their requests for photocopies. Under MICH. DEP'T OF CORR., Policy Directive (PD) 05.03.116, ¶ N,

> Prisoners who lack sufficient funds to pay for copies of documents in their possession, or available to them in the law library, which are necessary for the prisoner to file with the court or serve on a party to a lawsuit shall be loaned funds to pay for the copying. Funds shall not be loaned, however, for copying a document which can otherwise be reproduced by the prisoner, except if the document is notarized or was created for the prisoner through the Legal Writer Program and as otherwise required by court order for service of a federal lawsuit.

*Id.* The provision thus contains multiple qualifications that could have provided distinguishing differences between Plaintiff and Braddox: (1) a prisoner cannot obtain a loan for pages drafted by the prisoner; he must draft copies of such documents himself; (2) necessary copies of exhibits will be provided through an indigent loan, even if the complaint or other filing must be reproduced by the prisoner; (3) if a document is notarized, it will be copied; and (4) if the document is created by the Legal Writer Program, copies will be produced.[1] Plaintiff utterly fails to allege that he and Braddox were similarly situated as to each of these distinctions. Plaintiff submitted a handwritten complaint and a petition for administrative review; he does not allege that Braddox did the same. Plaintiff did not attempt only to make copies of exhibits; he does not allege what documents

---

[1] As evidenced by Plaintiff's attached grievances and responses, Plaintiff repeatedly was informed about the scope of the policy governing indigent loans for legal copies. (Attach. to Compl., ECF No. 1-1, PageID.11, 15.) Plaintiff simply insisted that he should not have to use the Legal Writer Program, and he never made a separate request for copies of the exhibits only.

Braddox sought to have copied. Plaintiff does not allege that his documents were notarized; he makes no allegation about whether Braddox's documents were notarized. Plaintiff did not receive his documents through the Legal Writer Program[2]; he does not allege whether Braddox's documents were produced by a legal writer.

In sum, Plaintiff's allegations fall far short of supporting his claim that he and Braddox were similarly situated in all relevant respects. As a result, Plaintiff fails to state an equal protection claim.

### B. Other Possible Constitutional Claims

Although Plaintiff expressly raises only an equal protection claim, the facts alleged and the attachments suggest two additional possible constitutional questions: denial of access to the courts and retaliation. Plaintiff expressly alleged in his initial grievance that Defendant Sikon's refusal to make copies was retaliatory and designed to interfere with his right to pursue litigation.

#### 1. Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that

---

[2] Both Plaintiff and Braddox, as prisoners housed in segregation, were entitled to participate in the Legal Writer Program. *See* MICH. DEP'T OF CORR., Policy Directive ¶ 05.03.116, ¶ S(5).

may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff fails to allege the nature of his civil rights claim or his petition for judicial review, much less to allege facts suggesting that the filings were nonfrivolous. He also neglects to allege that Sikon's actions actually prevented him from filing either matter. Because Plaintiff fails to allege that he was actually prevented from filing either his petition for judicial review in the state courts or his prisoner civil rights complaint in this Court, he fails to set forth facts demonstrating actual injury. He therefore fails to state an access-to-the-courts claim.

2. Retaliation

In his grievance, Plaintiff alleged that Defendant Sikon denied him copies in retaliation for filing a lawsuit or other unspecified protected activity. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

For purposes of this Opinion, the Court will assume that Plaintiff meets the first prong of the retaliation test by alleging that he was engaged in protected activity in attempting to file a lawsuit. Plaintiff's allegations of adverse action, however, are thin. He makes no allegations that Defendant Sikon prevented or attempted to prevent Plaintiff from filing his cases. Instead, Defendant Sikon returned the documents to Plaintiff, advising him of the limitations on copying under the rule and suggesting that Plaintiff use the Legal Writer Program or that he make sufficient handwritten copies of his complaint. Under these circumstances, Plaintiff fails to show that he had a legal need necessitating the copies, and he clearly had other means of exercising his rights in these matters. *See Smith v. Yarrow*, 78 F. App'x 529, 541 (6th Cir. 2003) (holding that an isolated incident of a refusal to photocopy prisoner's documents "not likely to deter a person of ordinary firmness from pressing on with his lawsuit."); *Maddox-El v. Hensen*, No. 2:15-cv-98, 2016 WL 3043139, at *3 (W.D. Mich. May 9, 2016) (same); *Slappy v. Frizzell*, No. 5:14-CV-P185-GNS, 2015 WL 236921, at *5 (W.D. Ky. Jan. 16, 2015) (same, citing *Smith*, 78 F. App'x at 541). Plaintiff therefore does not adequately allege that Defendant Sikon's denial of copies amounted to adverse action.

Moreover, Plaintiff utterly fails to allege facts suggesting that Defendant Sikon's decision not to copy the complaint and petition was motivated by retaliation. He does not allege a connection between the pleadings and Defendant Sikon, nor does he allege any other basis for Defendant Sikon's allegedly retaliatory action. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).

"[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Sikon retaliated against him for exercising his First Amendment rights. Accordingly, his speculative allegation of retaliation fails to state a claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: August 29, 2017　　　　　　　　/s/ Janet T. Neff
　　　　　　　　　　　　　　　　　　Janet T. Neff
　　　　　　　　　　　　　　　　　　United States District Judge